**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **EILISH THOMPSON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil No. SAG-23-01449** |
| | * | |
| **BALTIMORE CITY BOARD OF** | * | |
| **SCHOOL COMMISSIONERS, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**MEMORANDUM OPINION**</u>

Plaintiff Eilish Thompson, who is self-represented, filed this seventeen-count Second Amended Complaint against a series of defendants for claims relating to her previous employment as a teacher with the Baltimore City Board of School Commissioners ("BCBSC") and the handling of her discrimination charge by the Equal Employment Opportunity Commission ("EEOC") and Maryland Commission on Civil Rights ("MCCR"). ECF 22. Essentially, there are three distinct groups of defendants: (1) the BCBSC and its employees, Courtney Calhoun, Frank Lucas, Patricia Burrell, Patience Hein, Shavon Newkirk, and Sonja Brookins Santelises (collectively, "the BCBSC Defendants"); (2) the EEOC and its employee, Damon Johnson (collectively, "the EEOC Defendants"), and (3) the MCCR and its employees, Atto Commey and Cleveland L. Horton II (collectively, "the MCCR Defendants"). Service has not yet been effected as to the MCCR Defendants, and this Court has ordered the United States Marshals Service to make a third attempt at valid service. ECF 39. The BCBSC Defendants and the EEOC Defendants have each filed motions to dismiss Plaintiff's claims against them. ECF 23 (the EEOC Defendants); ECF 25 (the BCBSC Defendants). In addition, Plaintiff has filed a motion for leave to file a surreply, ECF 34,

which the BCBSC Defendants have opposed, ECF 35.[1] This Court has reviewed those motions and the relevant briefing. ECF 29–32. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the EEOC Defendants' motion to dismiss will be GRANTED, and the BCBSC Defendants' motion to dismiss will be GRANTED in part and DENIED in part.

## I.       FACTUAL BACKGROUND

The following facts are largely derived from the Second Amended Complaint, ECF 22, and are assumed to be true for purposes of these motions. Plaintiff was selected on August 2, 2019 to work at the North Bend Elementary Middle School in a teaching residency. *Id.* ¶ 20. On May 21, 2020, Plaintiff accepted a position as a fourth-grade math and science teacher at North Bend for the 2020–2021 school year. *Id.* ¶ 24. That same day, Defendant Patricia Burrell, the principal of North Bend, informed staff in a Zoom meeting that mold remediation of the building would occur before the school would re-open after the pandemic. *Id.* ¶ 25.

On or about January 21, 2021, Plaintiff contacted the field representative for the Baltimore Teacher's Union to ask whether the mold remediation had been completed and, if not, whether teachers' return to the building was required. *Id.* ¶ 27. The representative advised that a return-to-work date of February 22, 2021 had been confirmed. *Id.*

Two days after contacting the field representative, Plaintiff submitted a reasonable accommodation request to the EEOC office at the BCBSC, alleging a mental disability that would preclude her return to the building. *Id.* ¶¶ 29, 85. Eight days later, Burrell submitted documentation of her formal observation of Plaintiff's teaching, which resulted in "highly effective" or "effective" ratings in all areas. *Id.* ¶ 30.

---

[1] Portions of the BCBSC Defendants' reply brief present new arguments, therefore, this Court will grant the motion for leave to file a surreply. This Court has considered the contents of the surreply and the opposition thereto in preparing this memorandum opinion.

On February 10, 2021, Defendant Courtney Calhoun, the BCBSC's Equal Employment Opportunity ("EEO") and Title IX Compliance Officer, emailed Plaintiff to advise that her reasonable accommodation request had been denied. *Id.* ¶¶ 9, 31. The BCBSC did not engage in any further interactive process to discuss her disability or any means of accommodation. *Id.* ¶ 31. Defendant Frank Lucas, the Legal Affairs Investigator for the BCBSC, also gave Plaintiff a "courtesy phone call," in which he stated that her reasonable accommodation request was "not EEO." *Id.* ¶¶ 10, 32.

On that same date, Plaintiff informed Burrell and Defendant Patience Hein, the Vice Principal of North Bend, that she intended to appeal the denial of her reasonable accommodation request. *Id.* ¶ 33.

During a staff meeting on March 3, 2021, Plaintiff asked about the status of mold remediation at North Bend. *Id.* ¶ 35. Staff learned that air purifiers were added to each classroom, but that no updates were made to the malfunctioning or inoperable heating, ventilation, and air conditioning ("HVAC") units. *Id.* Later in March, an employee of Urban Teachers observed Plaintiff's classroom performance and gave her positive reviews. *Id.* ¶¶ 36–37.

On April 12, Defendant Shavon Newkirk, the "resident Principal" of North Bend, conducted a formal evaluation of Plaintiff. *Id.* ¶¶ 13, 38. When Newkirk provided verbal results of the evaluation two days later, she graded Plaintiff's performance negatively. *Id.* ¶ 41

That same day, Plaintiff submitted a second reasonable accommodation request to the EEOC office at the BCBSC, citing reasons materially identical to her reasons for the first request. *Id.* ¶ 40. Plaintiff took off work on April 15 due to anxiety, and emailed Hein and Burrell on April 21 to advise that she would take off work on April 22 to deal with anxiety. *Id.* ¶¶ 42, 44. Burrell advised Plaintiff that this would be her third absence and that she would receive a warning letter

at her fifth absence. *Id.* ¶ 44. Plaintiff explained that her absences related to her reasonable accommodation request. *Id.* Hein asked Plaintiff to come to the building and teach in person all of the days the following week to make up for taking days off. *Id.*

On April 22, 2021, Calhoun called Plaintiff to advise that her second reasonable accommodation request to teach virtually had been approved. *Id.* ¶ 45. Calhoun stated that he had had difficulty reaching Burrell to advise her of the decision. *Id.*

The next day, Plaintiff's assigned mentor, Simeon Wharton, conducted an informal classroom observation and graded Plaintiff's performance positively. *Id.* ¶ 48. On April 26, Newkirk conducted an observation. *Id.* ¶ 49. That same day, Melanie Smith, a math coach and instructional leader at North Bend, emailed Plaintiff a request to co-plan a lesson. *Id.* ¶ 50. They planned the lesson, and Plaintiff advised that she would use the materials in her class on April 29 and would record the lesson for Smith. *Id.* Newkirk and Hein informally observed the April 29 lesson, which Plaintiff recorded for Smith. *Id.* ¶ 54. After watching the recording, Smith expressed approval of Plaintiff's performance complying with the presentation plan. *Id.* ¶ 55. Newkirk met with Plaintiff, however, and gave her a negative review for her performance on both April 26 and April 29. *Id.* ¶ 56. Newkirk advised Plaintiff that she would be placed on a Performance Improvement Plan ("PIP"). *Id.* ¶ 58.

On April 30, Wharton again conducted an informal observation and graded Plaintiff positively. *Id.* ¶ 60. That same day, the administrative team invited Plaintiff to an Instructional Support Meeting to prepare the PIP. *Id.* ¶ 61. Plaintiff responded by asking whether she needed to attend the meeting if she indicated that she would not return to North Bend in the fall. *Id.* Hein advised that she could submit a resignation letter instead. *Id.* On or about May 2, Plaintiff sent Burrell a letter of resignation. *Id.* ¶ 62. Plaintiff received notice two days later that because she no

longer worked for BCPSC, she could no longer work as part of the Center for Talented Youth Teaching team, where she worked after school for about five hours per week. *Id.* ¶ 63.

On or about June 14, 2021, Plaintiff submitted a preliminary questionnaire to the MCCR to assert claims related to her disability. *Id.* ¶ 66. The questionnaire named Burrell as Plaintiff's immediate supervisor and asserted that Plaintiff's "accommodation request was unreasonably denied." ECF 30-1 at 73–82. Plaintiff subsequently received a call from an MCCR employee stating that she had to choose whether to proceed through the MCCR or EEOC. ECF 22 ¶ 69. Plaintiff opted for the MCCR and participated in an intake interview on July 2. *Id.* ¶¶ 69–70. The MCCR intake investigator sent her paperwork to sign, which she did on that same day. *Id.* ¶ 70. This paperwork operated as her official administrative complaint, which presented a "Charge of Discrimination" against the BCBSC but not against other individuals. ECF 27-1. The complaint mentioned that Burrell served as Plaintiff's immediate supervisor, and it also stated that the BCBSC's "management team and human resources division continually subjected [Plaintiff] to disability-related and retaliatory harassment." *Id.* at 5–6. The MCCR forwarded the complaint to Calhoun on July 8. *Id.* at 2–4.

Approximately ten months later, on or about March 16, 2022, she met with the MCCR's assigned investigator, Defendant Atto Commey. ECF 22 ¶ 71. On or about April 11, Commey informed Plaintiff that he found no probable cause for her claims, that she was not eligible for the accommodation due to "essential job duties," and that there was no accommodation because there were "some emails." *Id.* ¶ 72. Plaintiff received the written finding of no probable cause days later. *Id.* ¶ 73.

She sent a request for reconsideration to Defendant Cleveland L. Horton II, the Deputy Director of the MCCR, on April 27, 2022. *Id.* ¶¶ 17, 74. That same day, she sent a Substantial

Weight Review Request to Defendant Damon A. Johnson at the EEOC. *Id.* ¶ 75. On or about September 8, Horton advised Plaintiff in a letter that her request for reconsideration had been denied and that she had "the right to pursue [her] complaint with the [EEOC] or in the United States District Court for Maryland upon obtaining a Notice of Right to Sue from the EEOC." *Id.* ¶ 77. Plaintiff promptly sent a letter to Johnson regarding an EEOC review on September 18, and sent a follow-up letter to Johnson on October 17. *Id.* ¶¶ 78–79. Plaintiff believes that those two letters were not delivered by the post office. *Id.* ¶ 80.

Having heard nothing from Johnson, Plaintiff called Johnson's office on February 28, 2023. During that phone conversation, Johnson informed her that he mailed a Right to Sue letter to her address on July 5, 2022. *Id.* ¶ 81. But Plaintiff never received any such letter. She first saw the letter when Johnson emailed her a copy on February 28, 2023. *Id.* Three months later, on May 30, 2023, Plaintiff filed a lawsuit with this Court. ECF 1.

Between February, 2021 and the present, Plaintiff has experienced increased anxiety and panic attacks, racing pulse, nightmares, sleep difficulties, flashbacks, and issues with emotional regulation. ECF 22 ¶ 85. She attends regular therapy. *Id.*

The BCBSC received 1,427 accommodation requests in fiscal year 2021 related to the Americans with Disabilities Act ("ADA") and granted more than 500 requests for remote work accommodations. *Id.* ¶ 86.

## II.   LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a

defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

Because Plaintiff is self-represented, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. 10-CV-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd* 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d

387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because she is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also Maryland v. Sch. Bd.*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

In addition to bringing a Rule 12(b)(6) motion, a defendant may move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312. 316 (4th Cir. 2006). Once a challenge is made to subject matter jurisdiction, the Plaintiff bears the burden of proving, by a preponderance of evidence, that subject matter jurisdiction exists. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Therefore, the court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

## III.   ANALYSIS

Two sets of defendants—the EEOC Defendants and the BCBSC Defendants—have filed motions to dismiss Plaintiff's claims against them. This Court addresses each motion in turn.

A.  **Claims against the EEOC Defendants**

Although the Second Amended Complaint is not a model of clarity, Plaintiff essentially asserts four types of claims against the EEOC Defendants.[2] First, in Counts II through IV, she alleges that the EEOC's affirmation of the BCBSC's actions violated her statutory right to a reasonable accommodation for her disability. ECF 22 ¶¶ 90–98. Second, in Counts V through VIII, she asserts constitutional claims that the EEOC's actions and the EEOC's affirmance of the MCCR's decisions violated the due process protections of the Fourteenth Amendment and her privileges and immunities protection under Article IV. *Id.* ¶¶ 99–110. Third, in Count XI, she argues that the EEOC's affirmation of the BCBSC's actions violated her constitutional right to equal protection under the Fourteenth Amendment. *Id.* ¶¶ 123–25. Fourth, in Count XVII, Plaintiff alleges that the EEOC Defendants committed gross negligence in their handling of her complaint. *Id.* ¶¶ 156–59.

The EEOC Defendants have moved to dismiss all four types of claims against them for lack of subject matter jurisdiction. In support of their motion, they invoke the doctrine of sovereign immunity, which establishes that the federal government generally "may not be sued without its consent." *Strickland v. United States*, 32 F.4th 311, 363 (4th Cir. 2022) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). Congress may, however, enact statutes that waive the government's sovereign immunity for certain causes of action. *Id.* The Fourth Circuit and Supreme Court have described the waiver of sovereign immunity as "a prerequisite for jurisdiction." *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019) (quoting *Mitchell*, 463 U.S. at

---

[2] Because Plaintiff sues Defendant Damon Johnson in his official capacity, her suit against him must be treated as the one and the same as her suit against the EEOC. *See Durham v. Rapp*, 64 F. Supp. 3d 740, 747 (D. Md. 2014) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–67 & n. 14 (1985)) ("An action against a federal defendant in his official capacity is an action against the federal government.").

212). Thus, when a plaintiff sues the federal government and the government moves to dismiss on sovereign immunity grounds, the plaintiff "bears the burden of showing that the government has waived sovereign immunity at the motion to dismiss stage." *Id.* at 802.

In her Second Amended Complaint, Plaintiff bases her assertion that Congress has waived sovereign immunity on three different sets of statutes: (1) 28 U.S.C. § 1331 and § 1343, (2) 42 U.S.C. § 1983 and § 1988, and (3) 28 U.S.C. § 2201(a) and § 2202. ECF 22 ¶¶ 1–2. Plaintiff's opposition briefing sets forth two additional statutes: (4) 28 U.S.C. § 1346(b), and (5) 42 U.S.C. § 2000e-5. ECF 29 at 17–18. Because this Court finds that none of these statutes establish waiver of sovereign immunity, this Court will dismiss all claims against the EEOC Defendants for lack of subject matter jurisdiction.

### 1. 28 U.S.C. § 1331 and § 1343

Plaintiff first invokes 28 U.S.C. § 1331, the federal question jurisdiction statute. The statute says that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. At first glance, Plaintiff's case appears to arise under the Constitution because her Second Amended Complaint alleges constitutional violations under the Due Process Clause, Equal Protection Clause, and Privileges and Immunities Clause, ECF 22 ¶¶ 99–110, 123–25. However, the Fourth Circuit has held that Section 1331 "is not a general waiver of sovereign immunity. It merely establishes a subject matter that is within the competence of federal courts to entertain." *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) (quoting *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989)). So while the alleged constitutional violations might conceptually be suited for federal adjudication, the federal question jurisdictional statute cannot constitute a waiver of sovereign immunity. Therefore, there is no jurisdiction over those claims against the EEOC Defendants.

Plaintiff also relies on 28 U.S.C. § 1343, the general jurisdictional provision related to civil rights. Like Section 1331, Section 1343 is not a general waiver of sovereign immunity. *Perkins v. Comm'r of United States Food & Drug Admin.*, No. 20-CV-3142, 2020 WL 6544834, at *3 (D. Md. Nov. 6, 2020). And the statute, on its own terms, would not apply to this case. For instance, the first two subsections of the statute provide for federal court jurisdiction over suits alleging conspiracies to deprive individuals of civil rights under Section 1985. 28 U.S.C. § 1343(a)(1)–(2). But the Second Amended Complaint is wholly devoid of any allegations of conspiracy. Likewise, the third subsection only applies to infringement of rights "under color of any State law." *Id.* § 1343(a)(3). But the EEOC, as a federal agency, does not act under the color of state law. Finally, the fourth subsection provides for jurisdiction for relief "under any Act of Congress providing for the protection of civil rights." *Id.* § 1343(a)(4). But this language "does not by itself include any waiver" of sovereign immunity. *Salazar v. Heckler*, 787 F.2d 527, 528 (10th Cir. 1986). Instead, a court must look to the specific Act "invoked to determine whether that Act by its terms expresses Congress' consent to suits . . . by persons in the plaintiff's position." *Id.* at 529. Plaintiff has not identified any such Act here. Therefore, 28 U.S.C. § 1343 does not waive the EEOC Defendants' sovereign immunity.

### 2.  42 U.S.C. § 1983 and § 1988

Plaintiff additionally seeks to base jurisdiction on Section 1983, which provides an individual the right to sue state government employees acting under color of state law for civil rights violations. 42 U.S.C. § 1983. The statute is inapplicable because federal agencies and employees, like the EEOC and Johnson, do not act under the color of state law. *See District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973) (stating that Section 1983 "is of only limited

scope" and "does not reach . . . actions of the Federal Government"). Therefore, Section 1983 cannot serve as the basis for jurisdiction against them.

Plaintiff also invokes Section 1988. 42 U.S.C. § 1988. The first subsection of that statute instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts. *Id.* § 1988(a). The second subsection authorizes courts to award reasonable attorney's fees to prevailing parties in civil rights litigation. *Id.* § 1988(b). Neither subsection grants jurisdiction, so Section 1988 does not waive sovereign immunity against the EEOC Defendants.

### 3. 28 U.S.C. § 2201(a) and § 2202

Next, Plaintiff turns to the Declaratory Judgment Act as a basis for waiver of sovereign immunity. The Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). It also says, "[f]urther necessary or proper relief . . . may be granted . . . against any adverse party whose rights have been determined by [declaratory] judgment." *Id.* § 2202. Courts have consistently held that these provisions do not waive sovereign immunity or confer subject matter jurisdiction. *See Crowder v. N. Carolina Admin. Off. of Cts.*, 374 F. Supp. 3d 539, 544 (E.D.N.C. 2019) (holding that Section 2201 and 2202 "do not create a cause of action against the EEOC concerning how the EEOC processes complaints"); *Cir. City Stores, Inc. v. E.E.O.C.*, 75 F. Supp. 2d 491, 504 (E.D. Va. 1999) ("Nor does the Declaratory Judgement Act constitute a waiver of sovereign immunity or create a jurisdiction."), *aff'd*, 232 F.3d 887 (4th Cir. 2000). Thus, the Act does not establish jurisdiction over the EEOC Defendants.

### 4. 28 U.S.C. § 1346(b)

Plaintiff invokes the Federal Tort Claims Act ("FTCA"), which grants federal district courts jurisdiction over claims (1) against the United States (2) for money damages (3) for injury, loss of property, personal injury, or death (4) caused by the negligent or wrongful act or omission of a government employee who was (5) acting within the scope of their employment (6) under circumstances where the United States, if it were a private person, would be liable. 28 U.S.C. § 1346(b). As a waiver of sovereign immunity, the FTCA is to be narrowly construed. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992). If the FTCA is not applicable, or if an exception to the FTCA applies and removes the claim in question from the FTCA's purview, the government has not waived immunity, and this Court lacks jurisdiction. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).

Here, the FTCA is not applicable because it only waives sovereign immunity for suits brought officially against "the United States," not suits brought against federal agencies or federal employees individually. *See Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir. 1965) ("The plaintiffs assert specific reliance upon the [FTCA] to secure money damages against the S.E.C., but it is specifically provided by [28 U.S.C. § 2679] that a federal agency is not to be sued thereunder . . . ."); *Strong v. Dyar*, 573 F. Supp. 2d 880, 885 (D. Md. 2008) ("Since the FTCA only waives sovereign immunity for suits brought against 'the United States,' suits brought against a federal agency . . . or against a federal employee individually are dismissible for lack of jurisdiction."). Therefore, the FTCA cannot serve as the basis for jurisdiction against the EEOC Defendants.

### 5. 42 U.S.C. § 2000e-5

Finally, Plaintiff argues that the enforcement provisions of Title VII of the Civil Rights Act of 1964 give the EEOC the authority to be sued. 42 U.S.C. § 2000e-5. Plaintiff has brought a

discrimination claim based on disability, which is not a protected class under Title VII. But Title VII is relevant here because the American Disabilities Act expressly adopts the enforcement provisions of Title VII. 42 U.S.C. § 12117(a). Courts have consistently held that neither the plain text nor the legislative history of these provisions authorizes a suit against the EEOC "for claims that the EEOC failed properly to investigate or process an employment discrimination charge." *Baba v. Japan Travel Bureau Int'l, Inc.*, 111 F.3d 2, 6 (2d Cir. 1997); *see also McGuirl v. U.S. E.E.O.C.*, No. 02-CV-1097, 2004 WL 3168279, at *1 (D.D.C. Mar. 22, 2004) ("If [P]laintiff is dissatisfied with the results of an EEOC investigation, her remedy under Title VII is to sue her employer, not the EEOC, in district court."). Therefore, the provision does not provide a basis for waiving the EEOC's sovereign immunity.

Because sovereign immunity has not been waived under any of the statutes invoked by Plaintiff, subject matter jurisdiction is lacking, and this Court must dismiss all claims against the EEOC Defendants.

### B.  Claims against the BCBSC Defendants

Plaintiff's claims against the BCBSC Defendants can be sorted into six groups: (1) employment-based discrimination, (2) intentional infliction of emotional distress, (3) punitive damages, (4) gross negligence, (5) equal protection, and (6) negligent supervision. The defendants move to dismiss these claims on various procedural and substantive grounds. Each group is addressed separately below.

#### 1.  Discrimination

Counts I through IV alleges employment-based discrimination claims against the BCBSC Defendants based on their failure to accommodate Plaintiff's disability, constructive termination, retaliation, and the making of unequal terms and conditions. ECF 22 ¶¶ 87–98.

### a. Statute of Limitations

As an initial matter, Plaintiff argues that these claims are barred by the statute of limitations. A plaintiff alleging claims of employment discrimination based on disability must file suit within 90 days of receiving a Right to Sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a).

The BCBSC Defendants assert that the EEOC mailed the letter to Plaintiff's home address on July 5, 2022. ECF 22 ¶ 81. Plaintiff did not file her Complaint until May 30, 2023, over 300 days later. ECF 1. Thus, it would appear that Plaintiff's discrimination claims are time-barred. Plaintiff alleges, however, that she "never received" the Right to Sue letter, and that she had no notice of the letter's issuance until February 28, 2023, which is exactly 90 days before May 30.[3] ECF 22 ¶ 81. Thus, Plaintiff asserts that her discrimination claims are timely, because she initiated this lawsuit within 90 days of receiving notice of the issuance of the letter. The BCBSC Defendants argue that Plaintiff's mere assertion of non-receipt is insufficient to establish that his discrimination claims are timely. The BCBSC Defendants also argue that, in light of the presumption that letters are received three days after they are mailed, the Court should presume that Plaintiff received the "right to sue" letter on July 8, 2022, and adjudge her discrimination claims untimely.

There is some superficial appeal to the BCBSC Defendants' arguments. The defendants are correct that in the absence of evidence of the date of receipt, a Right to Sue letter is presumed to have been received by Plaintiff three days after it was issued and mailed, pursuant to Federal Rule of Civil Procedure 6(d). *Nguyen v. Inova Alexandria Hosp.*, No. 98-CV-2215, 1999 WL

---

[3] The last day of the 90-day period is May 29, 2023, but because that last day is a legal holiday, *i.e.*, Memorial Day, "the period continues to run until the end of the next day that is not . . . a legal holiday," which is May 30. FED. R. CIV. P. 6(a)(1)(C).

556446, at *4 (4th Cir. July 30, 1999); *Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 427 (D. Md. 2013) (citing *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 148 n. 1 (1984); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996)). This presumption might lead the Court to conclude that Plaintiff received the Right to Sue letter on July 8, 2022, which would render her discrimination claims untimely. *See, e.g.*, *Smith v. N. Virginia Orthodontics Ctr., LLC.*, No. 18-CV-1244, 2019 WL 3225686, at *3–4 (E.D. Va. July 16, 2019) (granting motion for summary judgment in favor of employer because general allegations regarding mail delays did not rebut the three-day presumption that employee received the Right to Sue letter); *DuPree v. United Food & Com. Workers Union*, No. 03-CV-930, 2005 WL 41562, at *2 (D. Del. Jan. 7, 2005) (granting employer's motion for summary judgment because employee's "bare assertion" of non-receipt did not rebut the three day presumption that he received the Right to Sue letter).

However, the BCBSC Defendants have challenged the timeliness of Plaintiff's discrimination claims via a motion to dismiss under Rule 12(b)(6).[4] In considering such a motion, the Court must accept as true the factual allegations in the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Here, Plaintiff has specifically alleged that she did not receive the Right to Sue letter, and that she first became aware of that letter on February 28, 2023. *See* ECF 22 ¶ 81. Accepting this allegation as true would render Plaintiff's

---

[4] The BCBSC Defendants have not moved for summary judgment in the alternative, despite offering for evidence an exhibit in support of its claim that Plaintiff viewed the letter on the EEOC's online portal. *See* ECF 25, 32. The exhibit is an "Activity Log" purportedly documenting actions taken on the portal. ECF 32-1. Although this Court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), it is unclear whether this log constitutes a public record. In any event, the exhibit does not necessarily establish that Plaintiff viewed the Right to Sue letter as opposed to viewing other parts of the portal.

discrimination claims timely. *See, e.g., Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 78 (E.D.N.Y. 2002) (denying employer's motion to dismiss discrimination claims because employee alleged in his complaint that he did not receive the Right to Sue letter). Although Plaintiff's allegation that she never received the Right to Sue letter is unexplained, the Court nevertheless is constrained to deny the motion to dismiss for this reason.

The BCBSC Defendants can investigate the veracity of Plaintiff's allegation of non-receipt during discovery, and bring a motion for summary judgment on this ground at a later date, if warranted. For now, however, the Court rejects the BCBSC Defendants' motion regarding the 90-day limitation period.

### b. Naming Requirement

Even if Plaintiff timely filed her discrimination claims, the BCBSC individual defendants—Calhoun, Lucas, Burrell, Hein, Newkirk, and Santelises—move to dismiss these claims for another reason. They argue that Plaintiff failed to exhaust her administrative remedies because she did not name any of the individual defendants as respondents in her MCCR complaint.

As a general rule, a civil action for employment discrimination may only be brought against the party named in the original administrative charges filed with the appropriate agency. *Alvarado v. Board of Trustees of Montgomery Community College*, 848 F.2d 457, 458–59 (4th Cir. 1988). This naming requirement serves two purposes: It notifies the charged party of the asserted violation and provides an opportunity for conciliation. *Id.* This requirement is not applied in a hyper-technical fashion, however. It will be excused "when the complainant names an entity that is functionally identical to the legal entity against which suit would eventually be filed, or when the purposes of the requirement are substantially met." *Kronk v. Carroll Cnty., MD*, No. 11-CV-277, 2012 WL 245059, at *5 (D. Md. Jan. 25, 2012).

The individual defendants argue that they were not properly notified because they were not named in the MCCR complaint. In response, Plaintiff contends that those defendants were constructively notified about the complaint because the MCCR must have had to speak with them to conduct a proper investigation and because Plaintiff included their names in the preliminary questionnaire that she submitted to the MCCR.

Neither the MCCR complaint nor the preliminary questionnaire satisfies the naming requirement and exceptions thereto. Plaintiff's MCCR complaint only names the BCBSC as a respondent and does not name any of the BCBSC individual defendants as respondents. ECF 27-1 at 5. The complaint describes misconduct by BCBSC's "management team and human resources division," but does not otherwise specify allegations against any of the individual defendants. *Id.* at 6. Thus, they had no reason to know of the MCCR charge and were not in positions to make them substitutable for or essentially identical to the named respondent in the charge. More specifically, although the complaint lists Burrell as Plaintiff's supervisor, *id.* at 5, it does not otherwise implicate Burrell or her actions such that she had reason to know about the complaint, *see Davis v. BBR Mgmt., LLC*, No. 10-CV-552, 2011 WL 337342, at *5 (D. Md. Jan. 31, 2011) (dismissing former employee's discrimination case against her supervisor and co-worker even though they were mentioned in her EEOC complaint because they "had no reason to know" about the complaint). And although the MCCR forwarded the complaint to Calhoun, ECF 27-1 at 2, the complaint was not specifically directed at Calhoun's actions, *id.* at 5–6. Finally, the preliminary questionnaire does not save Plaintiff's claims because it does not name any of the individual defendants. *See* ECF 30-1 at 73–82. For all these reasons, the discrimination claims in Counts I through IV must be dismissed against Calhoun, Lucas, Burrell, Hein, Newkirk, and Santelises. The claims will proceed, however, against the BCBSC.

###### 2. **Intentional Infliction of Emotional Distress**

Plaintiff alleges intentional infliction of emotional distress ("IIED") by most of the BCBSC individual defendants under Count XII of the Second Amended Complaint. ECF 22 ¶¶ 126–36. Plaintiff also alleges IIED by the BCBSC under Count X. *Id.* ¶¶ 118–20. In Maryland, an IIED claim requires four elements: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). The extreme and outrageous element requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (AM. L. INST. 1965)).

As to Defendants Newkirk, Hein, and Burrell, Plaintiff alleges that they intentionally downgraded her performance and refused to address the mold issue. ECF 22 ¶¶ 127–28. These allegations, while unfortunate and uncomfortable to Plaintiff, do not amount to extreme and outrageous conduct. Many employees in a civilized society tolerate poor performance reviews and less-than-ideal work environments. The allegations do not explain the seriousness of the mold issue, nor do they assert that the defendants egregiously facilitated a dangerous work environment.

As to Defendants Calhoun and Lucas, Plaintiff alleges that they did not offer her paid leave, denied her initial accommodation request, and failed to engage in an interactive process to accommodate her disability. *Id.* ¶¶ 129–33 These allegations essentially amount to a denial of Plaintiff's accommodation request. Such denial does not constitute extreme and outrageous behavior. *See Ritter v. Bd. of Educ. of Arcadia Loc. Sch.*, 535 F. Supp. 3d 690, 696 (N.D. Ohio 2021) (denial of a teacher's requested accommodations for her mental health conditions was not

extreme and outrageous); *Cardiel v. World Wide Tech. Holding Co.*, No. 11-CV-256, 2011 WL 3047712, at *3 (W.D. Tex. July 22, 2011) (denial of a warehouse employee's request for "light duty" accommodation following a serious illness was not extreme and outrageous).

As to Defendant BCBSC, Plaintiff alleges that the board failed to accommodate her disability and "breached" a duty "to act with due care and regard for [her] rights." ECF 22 ¶¶ 118–20. These allegations are conclusory and insufficient. They reflect a formulaic recitation of some of the elements of negligence, not IIED. Additionally, to the extent that they merely reflect a generalization of the actions of Newkirk, Hein, Burrell, Calhoun, and Lucas, they fail to state a claim for the same reason that the allegations against those individual defendants fail to state a claim. For all the foregoing reasons, Counts X and XII must be dismissed.

### 3. Punitive Damages

Counts IX and X assert that the BCBSC is jointly and severally liable for punitive damages based on its failure to accommodate Plaintiff's disability and based on its IIED respectively.[5] ECF 22 ¶¶ 111–22.

Plaintiff cannot recover punitive damages from the BCBSC based on the failure-to-accommodate claim. As a government entity, BCBSC is specifically exempted from punitive damages under Title I of the ADA, which governs failure-to-accommodate claims. *See E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 364 (4th Cir. 2008) (noting that Title I of the ADA governs failure-to-accommodate claims and incorporates the remedy provisions of 42 U.S.C. § 1981a); *Teasdell v. Baltimore Cnty. Bd. of Educ.*, No. 13-CV-107, 2013 WL 4804736, at *6 (D. Md. Sept. 6, 2013) (holding that 42 U.S.C. § 1981a(b)(1) specifically exempts "government[s],

---

[5] Although the claim states that "Defendants" are jointly and severally liable, the substance of the allegations are directed only at the BCBSC. Therefore, this Court construes the claim as being asserted against only the board.

government agenc[ies][and] political subdivision[s]"). Thus, Count IX will be dismissed against the BCBSC.

Plaintiff also cannot recover punitive damages from the BCBSC based on the IIED claim. As explained above, Plaintiff has not alleged facts that plausibly state an underlying IIED claim against the BCBSC. Therefore, she cannot recover punitive damages associated with that claim. Accordingly, Count X is dismissed against the BCBSC.

### 4.  Gross Negligence

Count XV alleges that the BCBSC Defendants acted in gross negligence by "failing to grant . . . her [initial] accommodation request" and "fail[ing] to provide school buildings that were free of known health hazards, such as mold and non-fully functional [HVAC] systems." ECF 22 ¶¶ 149–50. Under Maryland law, gross negligence entails "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and [it] also implies a thoughtless disregard of the consequences without an exertion of any effort to avoid them." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (citation omitted). "Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.*

The Second Amended Complaint contains no factual allegations that the defendants intentionally failed to grant her initial accommodation request or intentionally failed to eliminate health hazards. Nor does it contain facts plausibly stating that they failed to take those actions with utter indifference to Plaintiff's rights, aside from conclusory statements that they "acted as if her rights did not exist." ECF 22 ¶¶ 149–50. It is not as if the BCBSC Defendants simply did nothing and ignored Plaintiff's concerns. For example, although the defendants initially denied Plaintiff's

accommodation request, they granted her request just two months later based on new information. *Id.* ¶¶ 31, 40, 45, 47. And although they did not update the HVAC system to address the mold issue, they installed air purifiers in each classroom.[6] *Id.* ¶ 35. While Plaintiff believes that the defendants did not do enough, such allegations do not rise to the level of gross negligence. *Cf. Carbone v. Deutsche Bank Nat'l Tr. Co.*, No. 15-CV-1963, 2016 WL 4158354, at *4 (D. Md. Aug. 5, 2016) (dismissing gross negligence claim against bank for alleged failure to remediate mold and water damage in a home); *Malpica v. Kincaid*, No. 21-CV-417, 2022 WL 503966, at *7 (E.D. Va. Feb. 18, 2022) (dismissing gross negligence claim against certain jail employees for alleged failure to accommodate inmate's disability). Therefore, Count XV is dismissed.[7]

### 5. Equal Protection

Count XI alleges that the BCBSC Defendants violated the Equal Protection Clause by denying Plaintiff's accommodation request and simultaneously approving other teachers' accommodation requests. ECF 22 ¶ 124. Equal protection claims can be brought either (1) on behalf of a class or group of plaintiffs or (2) by a "class of one" plaintiff who does "not allege membership in a class or group." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff's claim is a class-of-one claim because the Second Amended Complaint does not assert that a particular class or group of employees had their accommodation requests categorically

---

[6] Plaintiff fails to allege facts that explain the seriousness of the mold problem, what the BCBSC Defendants knew about the problem, and what factors went into their evaluation of the problem.

[7] The BCBSC Defendants argue that, in any event, the gross negligence claim is barred by the Maryland Workers' Compensation Act, which "provides the exclusive remedy to an employee for an injury or death arising out of and in the course of employment." *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 99 (D. Md. 2011). This Court need not reach that issue.

denied while another class or group had theirs approved. Instead, Plaintiff challenges the denial of her individual request as arbitrary and unjustified as compared to other unspecified employees.[8]

The Supreme Court has expressly and categorically rejected class-of-one challenges to the employment-related decisions of public employers. *See EnQuest v. Oregon Dep't of Agr.*, 553 U.S. 591, 605–09 (2008) (declining to apply the Equal Protection Clause to "every allegedly arbitrary employment action" by government offices because such application would significantly disrupt the orderly operation of those offices). Plaintiff brings a class-of-one challenge to the employment-related decisions of the BCBSC, a public employer. Therefore, Count XI must be dismissed.

### 6. Negligent Supervision

Count XIII alleges that Santelises failed to properly supervise Newkirk, Hein, and Burrell when they downgraded Plaintiff's performance. ECF 22 ¶ 139. It also alleges that Santelises failed to properly supervise Calhoun and Lucas when they denied Plaintiff's initial accommodation request and failed to engage in an interactive process to discuss her disability. *Id.* ¶ 142. To bring a negligent supervision claim, Plaintiff must establish that (1) her injury was caused by the tortious conduct of the employee, (2) the employer knew or should have known by the exercise of diligence and reasonable care that the employee was capable of inflicting harm of some type, (3) the employer failed to use proper care in selecting, training, supervising, or retaining that employee, and (4) the employer's breach of its duty proximately caused Plaintiff's injury. *Bryant v. Better*

---

[8] Plaintiff's surreply suggests that Plaintiff is "potentially establishing a class action" for all employees whose accommodation requests were denied. ECF 34-1 at 11. But the denial of requests is the action being challenged, not the trait of a class or group. And this supposed class action is nowhere to be found in the Second Amended Complaint, therefore, it is not a part of this lawsuit. Finally, a self-represented litigant cannot be the class representative in a class action. *Fowler v. Lee*, 18 F. App'x 164, 165 (4th Cir. 2001).

*Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996) (citations omitted). Regarding the first element, courts may "not impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law." *Id.*

Plaintiff's allegations against Santelises fail to state a claim under the first element. The alleged failure to accommodate Plaintiff's disability is not a cognizable injury under the common law. *See Russell v. Russel Motor Cars Inc.*, 28 F. Supp. 3d 414, 419–20 (D. Md. 2014) (citation omitted) ("It is well established that [statutory discrimination] violations do not qualify as tortious conduct for the purposes of claims of negligent . . . supervision, because these claims must be based on common law injuries."). And for reasons explained above, there is no underlying tortious conduct arising from Plaintiff's remaining state law claims for intentional infliction of emotional distress and gross negligence. Therefore, the Second Amended Complaint fails to allege a negligent supervision claim against Santelises.

## IV.   CONCLUSION

For the reasons set forth above, the EEOC Defendants' Motion to Dismiss, ECF 23, is GRANTED, and the BCBSC Defendants' Motion to Dismiss, ECF 25, is GRANTED in part and DENIED in part. Counts VII, VIII, IX, X, XII, XIII, XV, and XVII are dismissed in their entirety. The case will proceed on the remaining Counts: Count I against the BCBSC, Counts II, III, and IV against the MCCR Defendants and the BCBSC, and Counts V, VI, XI, XIV, and XVI against the MCCR Defendants. A separate Order follows.

Dated: March 5, 2024                                     _____/s/_____

                                                        Stephanie A. Gallagher
                                                        United States District Judge